UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES HARNER,

       Plaintiff,

      v.                                  Case No. 1:12-cv-00820-KG-ACT

WONG CORPORATION, d/b/a PC MAGIC PRO,
a/k/a PC MAGIC,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

On July 27, 2013, Plaintiff Charles Harner filed a Complaint for Infringement of Copyright (Doc. 1) (Complaint). Defendant Wong Corporation, d/b/a PC Magic Pro, a/k/a PC Magic (Wong) now moves for summary judgment on all of Harner's claims in his Complaint. *See* Wong Corporation's Motion for Summary Judgment (Doc. 17), and Memorandum of Law in Support of Wong Corporation's Motion for Summary Judgment (Doc. 18) (Motion for Summary Judgment), filed Nov. 28, 2012. Harner opposes the Motion for Summary Judgment. *See* Response to Motion for Summary Judgment (Doc. 20) (Response), filed Dec. 12, 2012. Wong filed a reply brief on January 2, 2013. *See* Wong Corporation's Reply Memorandum in Further Support of Its Motion for Summary Judgment (Doc. 21) (Reply). On February 1, 2013, Wong filed a Notice of Supplemental Authority (Doc. 23). Harner responded to the Notice of Supplemental Authority on February 8, 2013. *See* Response to Notice of Supplemental Authority (Doc. 24).  For the following reasons, the Motion for Summary Judgment is granted in part and denied in part.

*I. Background*

    *A.   The Complaint*

This is a copyright infringement case that arises from two sets of advertisements. Wong hired Harner to create advertisements for Wong's computer repair business. Subsequently, Wong created its own advertisements for its business. Harner is now suing his former employer, Wong, for copyright infringement. In the Complaint, Harner asserts that Wong violated the Copyright Act of 1976, as amended, 28 U.S.C.A. §§ 1331 and 1338 (Copyright Act), when Wong willfully infringed on Harner's copyrighted materials in five publications: (1) Yellowbook 2008/2009 on pages 256, 261, 264, and 267 (2008/2009 Yellowbook Ads) (Count I)[1]; (2) "Use through January 2010" DEX Official Directory on page 347 (2010 DEX Ad) (Count II)[2]; (3) "Use through January 2011" DEX Official Directory on pages 276 and 280 (2011 DEX Ads) (Count III)[3]; Yellowbook 2010/2011 on page 238 (2010/2011 Yellowbook Ad) (Count IV)[4]; and (5) online at KRQE.com (KRQE.com Ad) (Count V)[5]. Harner requests actual damages and lost profits, statutory damages, and attorney's fees pursuant to the Copyright Act.

    *B.   The Motion for Summary Judgment*

Wong moves for summary judgment on all Counts in the Complaint. Wong argues that: (1) Harner does not own a valid copyright in the advertisements he created for Wong because Harner's advertisements are not copyrightable; or, alternatively, (2) only the selection and

---

[1] *See* Def.'s Ex. 2 (Doc. 18-2) for  photocopies of the 2008/2009 Yellowbook Ads.

[2] *See* Def.'s Ex. 3 (Doc. 18-3) for a photocopy of the 2010 DEX Ad.

[3] *See* Def.'s Ex. 4 (Doc. 18-4) for photocopies of the 2011 DEX Ads.

[4] *See* Def.'s Ex. 5 (Doc. 18-5) for a photocopy of the 2010/2011 Yellowbook Ad.

[5] *See* Def.'s Ex. 6 (Doc. 18-6) for a printout of KRQE.com Ad.

arrangement of the elements in Harner's advertisements qualify for "thin" copyright protection, and Harner cannot prove the required supersubstantial similarity required in a "thin" copyright infringement case; and (3) Harner does not have a claim for statutory damages or attorney's fees under the Copyright Act because Harner registered the advertisements he created for Wong with the United States Copyright Office after the alleged infringement began.

C.   *Summary of the Material Facts*[6]

Between 2000 and 2007, Harner was in the business of creating yellow pages[7] advertisements. Pl.'s Ex. 2 at ¶ 1 (Doc. 20-3). During that time, Wong operated a computer repair business and employed Sheue Y. Cheng as director of operations. Def.'s Ex. 7 at ¶ 1 (Doc. 18-7). Wong hired Harner to prepare yellow pages advertisements for Wong's business. Complaint at ¶ 5. Harner created at least four yellow pages advertisements for Wong.[8] Harner gave Wong permission to publish the advertisements in the yellow pages. Pl.'s Ex. 2 at ¶ 7 (Doc. 20-3). Each of the advertisements contained the following copyright notice: ©2002-2007 Charles Harner H.I.T.S., C.K.S. *Id.* Harner asserts that he revoked Wong's permission to use his advertisements in 2007. Complaint ¶ 1. Harner claims that in December 2007, March 2008, and May 2008 he warned Cheng that Wong would be infringing on his copyright if Wong used the advertisements any time after their publication in the "Use through January 2008" DEX Official

_____

[6] In a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, in this case Harner. *See Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). This summary of the material facts reflects the facts Harner presented in his favor.

[7] Yellow pages refer to a telephone directory of businesses, not to be confused with Yellowbook, which is a telephone directory publisher.

[8] It is unclear from the pleadings the exact number of advertisements that Harner created for Wong or in which yellow pages they were published. However, Wong attached photocopies of four different advertisements created by Harner for Wong's use. *See* Def.'s Exhibit 1(Doc. 18-1).

3

Directory. *Id.* After the warnings, Wong created its own advertisements for its computer repair business and printed the advertisements in Yellowbooks, in DEX Official Directories, and online at KRQE.com.

Harner registered the advertisements that he created for Wong with the United States Copyright Office under the title "Charles Harner's collection of yp ads" (herein known collectively as the "Registered Works" or each advertisement individually as a "Registered Work").[9] *See* Pl.'s Ex. 2 at ¶ 7 (Doc. 1-2). The registration became effective on June 7, 2010. *Id.* The Copyright Office Certificate of Registration (Certificate of Registration) states that Harner created "text, photograph(s), 2-D artwork" completed in 2007 and first published on December 15, 2007. *Id.* The Certificate of Registration lists the material excluded from the claim as "[s]ome photos and artwork" and the new material included in the claim as "[s]ome new photos and artwork, and new text." *Id.*

Neither the Complaint nor the Certificate of Registration lists the advertisements that Harner created for Wong or where the advertisements were printed. Attached to Wong's Motion for Summary Judgment are four photocopied images of advertisements that Wong labels as the advertisements that Harner created for Wong. *See* Def.'s Ex. 1 (Doc. 18-1). In Harner's Response, he does not dispute that the attached advertisements are the works that he created for Wong, and he does not describe any other advertisements as works that he created for Wong. Therefore, these four advertisements are considered all of the advertisements that Harner created for Wong and are collectively referred to as the Registered Works.

The four advertisements in the Registered Works have numerous similarities. First, each advertisement has the phrase "COMPUTER PROBLEMS?" printed in large text at the top of the

---

[9] *See* Def.'s Ex. 1 (Doc. 18-1) for photocopies of the Registered Works.

4

advertisement. *See* Def.'s Ex. 1 (Doc. 18-1). To the right of that phrase, each advertisement has a circle with "$25" printed inside of it. *Id.* All of the advertisements contain the phrase, "*WE KNOW HOW COMPUTERS WORK!*" near the top of the advertisements. *Id.* The advertisements all display the telephone number, address, website, and hours of Wong's business. *Id.* Finally, each advertisement has a picture of Cheng printed in either the lower right or left corner. *Id.* Although each advertisement contains numerous similarities, each has unique elements and a unique arrangement of these elements. Below is a brief description of the major elements of each advertisement.

       *1. Registered Work #1*[10]

The first advertisement contained in the Registered Works (Registered Work #1) features a half-page advertisement printed in a DEX Directory on page 352. The advertisement contains the following four lines of large text at the top of the page, each on its own line:  "COMPUTER PROBLEMS?"; "*WE KNOW HOW COMPUTERS WORK!*"; "Have our PRO-Techs Help PROTECT your computer!!!"; and "The Original Complete Computer Store! [*sic*] of New Mexico!" Below these phrases are seventeen pictures of computer components. Eleven of the pictures are grouped together in the middle left portion of the advertisement in a clustered arrangement. The other six pictures are organized in two stacked horizontal boxes to the right of the other eleven pictures. In the lower box are two arrows pointing to the computer components. Finally, a photo of Cheng facing slightly to the left is printed in the lower right corner of the advertisement with the phrase "Call Us Today!", the store's telephone number, and the store's hours printed on the lower part of her photograph.

---

[10] Nowhere in the pleadings are the individual advertisements in the Registered Works labeled. Therefore, the Court has labeled each numerically by reference to the advertisement's placement within the Registered Works. Registered Work #1 is photocopied on page 1 of Def.'s Ex. 1 (Doc. 18-1).

### 2.   Registered Work #2[11]

Registered Work #2 is the largest of the advertisements, covering roughly two-thirds of the page. On the top of the advertisement in large print is the phrase "COMPUTER PROBLEMS?" Below that phrase, in smaller print, is the phrase "Repair/UPGRADE or get a NEW COMPUTER From us!" and below that phrase, the advertisement states "*We Know How Computers Work!*" The middle section of the advertisement consists of seven boxes in two rows. The upper row has four boxes side-by-side, each containing pictures of computer components. Three of those four boxes also contain arrows pointing to the pictures of computer components. The remaining three boxes make up the bottom row with the outside boxes containing text and the middle box containing a picture of Wong's employees with the phrase "PRO TEAM" printed on the photo. Finally, a large picture of Cheng is printed in the bottom right corner of the advertisement.

### 3.   Registered Work #3[12]

Registered Work #3 is a half-page advertisement. It has five lines of short phrases and slogans at the top half of the advertisement. The top phrase, "COMPUTER PROBLEMS?", is printed in considerably larger text than the other phrases. Below the text, in the lower right quarter of the advertisement are five circles arranged horizontally with pictures of computer components printed within the circles. Registered Work #3 is different from the other advertisements in the Registered Works  in two significant ways. First, the picture of Cheng is located in the lower left corner of the advertisement. Second, to the right of Cheng's picture is a

---

[11] Registered Work #2 is photocopied on page 2 of Def.'s Ex. 1 (Doc. 18-1).

[12] Registered Work #3 is photocopied on the top half of page 3 of Def.'s Ex. 1 (Doc. 18-1).

rectangular box with the heading "WARNING" and a triangle with an exclamation mark inside.

Inside the box is the following statement:

> A recent poll suggested that 8 out of 10 contractors don't know what they are doing!
> Imagine someone dropping by to repair your computer and they didn't have the parts, or worse, taking so long to repair it.
> How about finding out later that they are no longer in business. Ask your friends who they would recommend or Better [*sic*] yet, drop by and see why our clients always come back to us!

### 4. Registered Work #4

Registered Work # 4 is identical to Registered Work #1 except that the picture of Cheng is slightly more zoomed in and facing slightly to the right.

## II. Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[13] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc.* 912 F.2d at 1241. The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

---

[13] Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

*III. Discussion: Copyright Infringement*

To prevail on a claim of copyright infringement, the plaintiff must establish: (1) ownership of a valid copyright, and (2) unlawful copying of elements of the work that are original. *TransWestern Publ'g Co., v. Multimedia Mktg. Assocs.,* 133 F.3d 773, 775 (10th Cir. 1998) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)). For the second element, the plaintiff may prove unlawful copying by establishing that (1) the defendant "had access to the copyrighted work" and (2) "there are probative similarities between the copyrighted material and the allegedly copied material." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996) (citation omitted).

    A.   *Ownership of a Valid Copyright: Original Works of Authorship*

Harner asserts that he owns a valid copyright in the Registered Works because he registered the advertisements with the United States Copyright Office. Complaint at ¶ 6. Wong argues that the Registered Works are not entitled to copyright protection. Motion for Summary Judgment at 5-11. A Certificate of Registration obtained within five years of first publication constitutes "*prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Harner's Certificate of Registration states that the advertisements first were published in 2007, which is within five years of Harner obtaining the 2010 Certificate of Registration. The Certificate of Registration, therefore, is *prima facie* evidence that the copyright is valid. However, Wong may overcome that *prima facie* evidence of validity "by presenting evidence and legal argument sufficient to establish that the works in question [are] not entitled to copyright protection." *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.,* 528 F.3d 1258, 1262 (10th Cir. 2008).

Wong argues that the Registered Works are not copyrightable because the advertisements are not original. Copyright protection extends only to "original works of authorship." 17 U.S.C. § 102(a). In order to be "original," the work must (1) be "independently created by the author (as opposed to copied from other works)," and (2) possess "at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. The required level of creativity is "extremely low; even a slight amount will suffice." *Id.* The "vast majority of works" will meet the requisite creativity, "no matter how crude, humble or obvious" the work might be. *Id.*

In its Motion for Summary Judgment, Wong employs a divide and conquer approach, taking each of the following elements of the Registered Works and arguing that the elements do not possess a minimal degree of creativity: (1) the phrases and slogans, (2) the photographs of computer components, and (3) the selection and arrangement of the elements found in the advertisements.

### (a) The Phrases and Slogans

The Registered Works include numerous short phrases and slogans. The shortest phrases and slogans consist of one or two words, including "Buy," "PRO TEAM," and "WE REPAIR." The two longest phrases and slogans are, "Thank you for making us the best computer store in New Mexico" and "Have our PRO-techs Help PROTECT your computer!!!"[14]

First, it is unclear whether Harner created the short phrases and slogans independently. Harner claims that he was the first person in Albuquerque to use certain phrases in computer repair advertisements: "Computer Problems?", "Want A New Computer?", and "We Know How

---

[14] The Court notes that Registered Work #3 contains text within a "WARNING" box that is rather lengthy. Harner, however, does not argue that this text was independently created or that it possesses a minimal degree of creativity and that it, therefore, is an original work of authorship entitled to copyright protection. The Court construes this lack of argument to mean that Harner concedes that this warning text is not copyrightable.

Computers Work!" Pl.'s Ex. 2 at ¶ 6 (Doc. 20-3). However, he does not discuss whether he created these particular phrases and the other phrases and slogans in the advertisements or whether Wong or another source created them.

Furthermore, "[c]opyright protection does not extend to fragmentary words or short phrases that lack the minimal level of creativity necessary to warrant copyright protection." *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1237 (D. Colo. 2009) (citing *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519-20 (1st Cir. 1996)). *See also Magic Mktg. v. Mailing Servs. of Pittsburgh, Inc.*, 634 F.Supp. 769, 771 (noting that even "colorful descriptions, such as advertising slogans, are not accorded copyright protection"); *Feist*, 499 U.S. at 344 ("facts are not copyrightable"); *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990) ("titles, in and of themselves, cannot claim statutory copyright."). Indeed, regulations published by the United States Copyright Office provide that "[w]ords and short phrases such as names, titles, and slogans" are not subject to copyright. 37 C.F.R. § 202.1(a).

Courts have denied copyright protection to phrases and slogans with varying degrees of complexity. In *Magic Mktg.* 634 F.Supp. at 772, envelopes describing their contents with phrases such as "TELEGRAM," "GIFT CHECK," "PRIORITY MESSAGE", and "CONTENTS REQUIRE IMMEDIATE ATTENTION" did not possess a sufficient degree of creativity to be copyrightable. As well, the Seventh Circuit Court of Appeals did not accord copyright protection to an advertising slogan that contained the colorful description of a hygiene product as the "most personal sort of deodorant." *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972). Finally, copyright protection was denied to longer phrases, such as "if you're still 'on the clock' at quitting time" and "clock in and make $50 an hour," because the phrases contained

10

"clichéd language" typical of phrases that convey the idea of employment. *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1520 (1st Cir. 1996). Harner, however, cites to *Health Grades, Inc.*, 634 F. Supp. 2d at 1238, in which the court, in *dicta*, stated that "it does not make sense to state categorically that no combination of numbers or words short enough to be deemed a 'phrase' can possess 'at least some minimal degree of creativity.'" Harner cites to no substantive authority which provides examples of phrases receiving copyright protection, nor does Harner argue that any specific phrase in the Registered Works actually contains a minimal degree of creativity to qualify for copyright protection.

The longer phrases contain a similar degree of creativity to the phrases in *Alberto-Culver Co.* and *CMM Cable Rep.* The phrases in these cases, including this one, are used to relay information about the business and products offered by the business. The phrase "Thank you for making us the best computer store in New Mexico" is a standard phrase that contains clichéd language for thanking customers for their business. The phrase "Have our PRO-techs Help PROTECT your computer!!!" is a slogan that describes the services offered by Wong. The slogan is similar to the slogans that were uncopyrightable in *Alberto-Culver Co.* and *CMM Cable Rep.* Therefore, even assuming that Harner independently created the short phrases and slogans in the Registered Works, a reasonable jury could not find that they are sufficiently creative to receive copyright protection.

### (b) The Photographs

The Registered Works also contain numerous photographs of computers and computer components. Most of the pictures are straight-on or slightly-angled individual photographs of computer components, including monitors, keyboards, internet modems, and internet routers. The most complex photograph is of a laptop computer taken from an angle from which one can

see the CD drive open and holding a CD. Additionally, the Registered Works include photographs of Cheng facing forward with her hair down and smiling. Wong argues that the individual images of the computers and computer components are not creative enough to receive copyrightable protection.

As with the short phrases and slogans, it is unclear from the pleadings whether Harner independently created the photographs in the Registered Works. Harner states that he "created the digital images by using multiple computer programs" that included photographs he took, although he does not state which images he photographed. Pl.'s Ex. 2 at ¶¶ 2-3 (Doc. 20-3). Wong states that Harner used pre-existing photographs of computer components.

Purely descriptive photographs are not sufficiently original to be protected by copyright law. *See Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542, 549 (E.D.N.C.2008) ("[T]here is no 'creative spark' involved in a purely descriptive picture of a product."). For example, in *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001), photographs of common Chinese food dishes "as they appear on the plates served to customers at restaurants" lacked the requisite "creative spark" to be protected under the Copyright Act. Rather than being original works with the requisite minimal level of creativity, the photographs were only meant to "serve a purely utilitarian purpose: to identify [the food items for sale]." The court also noted that finding the photographs to be copyrightable "would secure plaintiffs the exclusive right of use in such photographs, which effectively would permit them to monopolize the market for printing menus that depict certain commonly served Chinese dishes." *Id.* at 548.

The photographs in this case are similar to the photographs of Chinese dishes in *Oriental Art Printing, Inc.* In both cases, the photographs at issue were meant to serve the utilitarian

purpose of presenting the various types of products and services that the businesses offer. For example, the purpose of the photograph of the laptop with the CD drive open is to show potential viewers that Wong's computer business repairs and sells laptop computers; likewise, in *Oriental Art Printing, Inc.*, the purpose of the photograph of a Chinese food dish in a menu was to display the different food choices to diners. Additionally, just as the plaintiffs in *Oriental Art Printing, Inc.,* could not monopolize the market on Chinese food menus by copyrighting purely descriptive photographs of Chinese food, Harner may not corner the market on advertising computer repair businesses by copyrighting purely descriptive pictures of computer components. In both cases the photographs do not merit copyright protection because the photographs lack the requisite creativity. *See also Stokes Seeds Ltd. v. Geo. W. Park Seed Co., Inc.*, 783 F.Supp. 104, 107 (W.D.N.Y. 1991) (individual photographs of emerging seedlings of plants in which "care was taken in the selection of photographic angles and the levels of light" not copyrightable because photographs lacked "artistic merit"). Even assuming that Harner independently created the photographs featured in the Registered Works, a reasonable jury could not find that the photographs possess the requisite creativity to be copyrightable.

### (c) The Selection and Arrangement of the Elements

The Court must first determine the nature of Harner's work under the Copyright Act in order to decide if the selection and arrangement of the elements is copyrightable. Wong contends that the Registered Works constitute compilations. Harner, in contrast, asserts that the Registered Works are pictorial and graphic works. A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. In comparison, "[p]ictorial, graphic, and sculptural works" include "two-dimensional and

three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings." *Id.* The Registered Works are properly classified as compilations. Harner selected preexisting phrases, slogans, and photographs, arranging the elements in each advertisement in ways that he felt best attracted readers to the advertisements. The advertisements in the Registered Works do not qualify for any of the listed categories under pictorial, graphic and sculptural works. Therefore, as a matter of law, Harner's design of the advertisements constitutes an original work of authorship as a compilation. *See Express Lien Inc. v. National Ass'n of Credit Mgmt. Inc.*, 2013 WL 4517944 *3 (E.D. La.) (slip op.) (holding that decision of whether copyrighted work is compilation is matter of law).

With respect to the selection and arrangement of the individual elements as a compilation of those elements, Wong asserts that the Registered Works lack the minimum degree of creativity to qualify for copyright protection. Wong additionally argues that the *scènes à faire* doctrine precludes the selection and arrangement of the elements in each advertisement from being protected under the Copyright Act. Although short phrases and generic images by themselves are not copyrightable, compilations of such items may be protected because they "may possess the requisite originality." *Feist*, at 344-348; *see* 17 U.S.C. § 103 (identifying compilations as work that may be copyrighted). A compilation is original and hence copyrightable if the author has independently and with at least a minimal degree of creativity made decisions as to "which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *Feist*, 499 U.S. at 348, 357-58. However, copyright protection extends "only [to] the elements that owe their origin to the

compiler - the selection, coordination, and arrangement -" and not to the individual elements underlying the author's compilation, which remain unprotected. *Id.* at 359.

Harner has presented evidence stating that he independently selected and arranged the elements without assistance. *See* Def.'s Ex 2 at ¶ 5 (Doc. 20-3). Moreover, this case is similar to *Dahlen v. Mich. Licensed Beverage Ass'n*, 132 F. Supp. 2d 574, 581-82 (E.D. Mich. 2001) in which the court granted copyright protection to the arrangement of a poster containing information about drinking and driving. Although the individual elements contained in the poster were non-copyrightable "brute facts and public domain materials," the court granted copyright protection to the compilation of the facts and pre-existing materials. *Id.* The court noted that the Plaintiff's arrangement of the poster included

> a boldface and enlarged block of text at the top of the poster to catch the reader's attention and convey the central message of safety, the use of bold or capitalized letters throughout the poster to emphasize certain words and phrases, bullet points highlighting various facts relating to drinking and driving, a box of text in the middle of the poster surrounded by two columns of additional text, and a border around the outer edges of the poster.

*Id.* at 582. The court held that these arrangement choices did not conform to an "age-old practice," nor were they "so commonplace that it has come to be expected as a matter of course." *Id.* Rather, the poster's arrangement possessed the requisite "minimal level of creativity" to receive copyright protection. *Id.*

Recently, the Tenth Circuit Court of Appeals gave the following examples of selection and arrangements of elements that are entitled to copyright protection:

> [A] sweater designer can have copyright protection over an original way of using squirrels as a design element in conjunction with fall colors, stripes, and panels, even though those elements individually constitute ideas in the public domain. A plaintiff's "selective and particularized" alterations of a public-domain carpet pattern also can constitute protectable expression.

*Blehm v. Jacobs*, 702 F.3d 1193, 1202 (10th Cir. 2012) (citations omitted); *see also Oriental Art Printing*, 175 F. Supp. 2d at 548 (holding that compilation of uncopyrightable pictures of Chinese food dishes in menu, arranged in various patterns on white background, including "arranged in full circles, semi-circles, and open circles, ovals, zigzags, and parallel rows, among other patterns" and including "certain geometric artwork, such as floating hearts, stars, or diamonds" was copyrightable because overall design contained requisite originality); *Stokes Seeds Ltd.* 783 F.Supp. at 105-06 (a portfolio of photographs of the emerging plant seedlings was copyrightable as a compilation even though the individual pictures of the seedlings were not copyrightable).

The selection and arrangement of the text in the Registered Works is similar to the selection and arrangement of the text in *Dahlen*. As in *Dahlen*, Harner selected and arranged uncopyrightable text, and made decisions regarding the font, size, and capitalization of the text. In both cases, the authors decided on ways to grab the reader's attention and to convey their central messages that are not so commonplace as to be expected in similar works.

The selection and arrangement of the photographs in the Registered Works is also analogous to the examples given by the Tenth Circuit, as well as in *Oriental Art Printing* and *Stokes Seeds*. Similar to the Tenth Circuit examples, Harner used an original way to display photographs of computer components in conjunction with arrows, boxes, circles, and text. The same was true in *Oriental Art Printing* and *Stokes Seeds*. Therefore, a reasonable jury could conclude that these efforts by Harner cross the low threshold requirement for creativity under the Copyright Act.

Finally, Wong argues that the selection and arrangement of the elements in each advertisement in the Registered Works are unprotected under the *scènes à faire* doctrine. The

16

*scènes à faire* doctrine provides that "expressive elements of a work are not entitled to protection against infringement if they are standard, stock, or common to a topic, or if they necessarily follow from a common theme or setting." *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1374 (10th Cir. 1997) (citing *Gates Rubber Co.*, 9 F.3d at 838). This doctrine "identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'" *Id.* at 1375. However, "[t]he difference between the *scènes à faire* doctrine and copyright invalidity is vital to maintain." *Reed-Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 914 (7th Cir. 1996).

Wong relies on two cases to make his argument. In the first case, *Reed-Union Corp.*, the plaintiff company produced NU FINISH, a car polish. *Id.* at 910–911. The defendant, Turtle Wax, produced a competing car polish, FINISH 2001. *Id.* at 911. The plaintiff made a television commercial in which NU FINISH was applied to a junkyard car which was then washed fifty-two times, and the shine remained. *Id.* at 913. The NU FINISH commercial also featured the results of independent lab tests. *Id.* Later, Turtle Wax came out with FINISH 2001 commercials. *Id.* The FINISH 2001 commercials featured a car in a junkyard-like setting and featured lab test results and displayed photographs of a freshly waxed car before and after 104 washes. *Id.* The plaintiff sued for copyright infringement because of the similar elements of the commercials. *Id.* at 911. The Seventh Circuit held that the FINISH 2001 commercials did not infringe on the NU FINISH commercials because the *scènes à faire* doctrine precluded protection to common and unoriginal ideas in the commercials, such as polishing and washing cars to display the longevity of the wax, and such as featuring lab tests. *Id.* at 913-914. Although the Seventh Circuit held that the individual ideas in the commercials were not copyrightable, the Seventh Circuit went on to note that the selection and arrangement of those ideas could be protected by copyright law. *Id.*

The Seventh Circuit gave the example of William Shakespeare's play *Romeo and Juliet*. *Id.* at 914. The core scenes in the play, such as the war between rival clans and the love between children of the clans, are public domain and may be used freely in subsequent works. *Id.* However, another author could copyright his own unique selection and combination of Shakespeare's ideas, for example in the musical *West Side Story* (Bernstein, Sondheim, and Laurents, 1957), and no one could copy that subsequent musical without permission. *Id.*

In *Hearthware, Inc. v. E. Mishan & Sons, Inc.*, 2012 WL 3309634 (N.D. Ill.) (slip op.), the court analyzed whether the defendant's thirty-minute halogen oven infomercial infringed on the plaintiff's prior infomercial for a similar product. The infomercials had numerous similarities, including the suggestion that the oven could be used in an RV, boat, or dormitory; the use of time-lapse footage to show the food cooking; and the use of salmon and asparagus to demonstrate cooking in the ovens. *Id.* at *3. Many of the elements allegedly copied had appeared in numerous other infomercials concerning similar products. *Id.* at *4. For example, time-lapse photography of food cooking in the oven was featured in at least five other halogen oven infomercials. *Id.* The court held that the similar aspects of the infomercials were "commonplace in the world of halogen oven infomercials," making the similarities *scènes à faire* and unprotected by copyright law. *Id.* at *4-5. The similarities cited by the plaintiff were, "as a practical matter, indispensable or at least standard in presenting a halogen oven infomercial." *Id.* at *5. Further, the plaintiff did not suggest that the plaintiff's infomercials used any "new or novel manners" of presenting the halogen oven. *Id.*

Wong contends that it is "commonplace for a computer company to combine images of computer components and employees with phrases identifying services the company provides." Reply at 12-13. Harner counters by arguing that his presentation of the elements in the

Registered Works differs from the advertisements of other computer repair companies. (Doc. 20). Harner asserts that the Registered Works were the first advertisements in Albuquerque to contain multi-layer images; the phrases "Computer Problems?", "Want A New Computer?", and "*We Know How Computers Work!*"; and a photograph of a woman as a major element of the advertisement. Pl.'s Ex. 2 at ¶ 6 (Doc. 20-3).

When comparing the selection and arrangement of the elements in the Registered Works to other yellow pages advertisements, the Registered Works stand out as unique. Wong provided photocopies of three yellow pages comprised of roughly fifteen computer repair advertisements. Def.'s Ex. 8 (Doc. 18-8). Only two of the fifteen advertisements feature pictures of computer components, and none feature more than two pictures of computer components. *Id.* Only one advertisement features a picture of an employee. *Id.* Finally, none of the advertisements submitted by Wong contain arrows pointing to computer components. *Id.* Unlike in *Hearthware, Inc.*, in which the plaintiff provided at least five other infomercials that featured the same elements, Wong provides no examples of computer repair advertisements that selected and arranged photographs and phrases in the same way as the Registered Works. Wong's failure to produce similar advertisements indicates that the selection and arrangement of the elements in Harner's advertisements is original, new, and novel, unlike in *Reed-Union Corp.* and *Hearthware Inc.*, and not indispensible or standard. Finally, as demonstrated by the *Romeo and Juliet* example in *Reed-Union Corp.*, even if the use of certain elements in the Registered Works was commonplace in computer repair advertisements, a reasonable jury could find that Harner possessed a valid copyright in the unique selection and arrangement of those common features. For those reasons, the *scènes à faire* doctrine is not applicable in this case.

19

In sum, a reasonable jury could find that the selection and arrangement of the individual elements of the Registered Works were original works of authorship. Hence, Wong has not overcome the *prima facie* evidence of validity expressed in the Certificate of Registration. Harner, therefore, has presented sufficient evidence to show ownership of a valid copyright with respect to the Registered Works.

B.   *Copying of Elements of the Works that are Original*

To prove unlawful copying, Harner must show that (1) Wong had access to the copyrighted material, and (2) substantial similarities exist between the copyrighted material and the alleged copied material. *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284 (citations omitted).

*(a) Access*

Access is proven by a plaintiff's evidence that a defendant viewed or had reasonable opportunity to view or copy the protected work. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1778 (10th Cir. 2009). Neither party in this case presents arguments regarding whether Wong viewed or had a reasonable opportunity to view the Registered Works. However, viewing the facts in the light most favorable to Harner strongly suggests that Wong viewed or had a reasonable opportunity to view the advertisements. Additionally, Cheng claims that she worked with Harner in the creation of the advertisements. Pl. Ex. 7 at ¶ 2 (Doc. 18-7). Wong then received permission from Harner to print the advertisements in various publications. Def.'s Ex. 2 at ¶ 7 (Doc. 20-3). Based on these facts, a reasonable jury could find that Wong reviewed the advertisements either before or after their publication and thus had access to the Registered Works.

20

*(b) Substantial Similarities*

Once access is proven, the next step in deciding the copying element is to determine whether the selection and arrangement of the elements in the 2008/2009 Yellowbook Ads, 2010 DEX Ad, 2011 DEX Ads, 2010/2011 Yellowbook Ad, and the KRQE.com Ad are substantially similar to the selection and arrangement of the elements in Harner's Registered Works. To decide this, the Court must consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking materials of substance and value." *Country Kids 'N City Slicks,* 77 F.3d at 1288 (citation omitted). Put another way, "the substantial similarity test asks whether the ordinary observer, unless he set out to detect the disparities [between the works], would be disposed to overlook them, and regard their aesthetic appeal as the same." *Blehm v. Jacobs*, 702 F.3d 1193, 1202 (10th Cir. 2012) (quotations omitted).  This determination "is primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis." *Gates,* 9 F.3d at 839 (citation and footnote omitted). Whether works are substantially similar is "a classic jury question." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002). Although the issue of substantial similarity "is frequently a fact issue for jury resolution, ... a court may determine non-infringement as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Warner Bros. Inc. v. American Broadcasting Co., Inc.*, 720 F.2d 231, 239–40 (2d Cir.1983) (internal quotation marks and citations omitted).

21

The Tenth Circuit Court of Appeals employs the "abstraction-filtration-comparison" test to determine whether the accused work is substantially similar to the protectable elements of a copyrighted work. *See Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284 (citation omitted). The abstraction-filtration-comparison test follows a three-step process. The first step, called the "abstraction step," requires the Court to "separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work." *Id.* at 1284–85. During the second step, the Court "filter[s] out the nonprotectable components of the product from the original expression." *Id.* Finally, the court "compare[s] the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar." *Id.*

In applying the "abstraction-filtration-comparison" test in this case, the first step has already been completed.  The non-protectable elements – the phrases, slogans, and photographs – were separated from the protectable element, the selection and arrangement of the elements of the advertisements. The second step requires the filtering out of the non-protectable elements from the Registered Works. After filtering out those elements, what remains are Harner's selection and arrangement of the elements in each advertisement. The final step requires the Court to compare the selection and arrangement of the elements in the Registered Works to the advertisements contained in each of the five Counts in the Complaint to determine whether any of the advertisements are substantially similar.

To perform the comparison portion of the test, the Court must determine the degree of similarity required between the works in order for there to be copyright infringement. *See Jacobsen*, 287 F.3d at 943. Wong argues that the works must be "supersubstantially similar" in order for there to be infringement because the selection and arrangement of the elements in the

22

advertisements receives only "thin" copyright protection. *See* Motion for Summary Judgment at 10-13. In contrast, Harner contends that the alleged infringement should be measured by the traditional substantial similarity test. *See* Response at 3-5.

The measure of what degree of "substantial similarity" a court must use varies according to the circumstances. *Jacobsen*, 287 F.3d at 943 (citing *Country Kids 'N City Slicks*, 77 F.3d at 1288).

> For many copyrights represent significant creative effort, and are therefore reasonably robust, whereas others reflect only scant creativity; the Supreme Court labels the latter "thin." It would seem to follow analytically that more similarity is required when less protectable matter is at issue. Thus, if substantial similarity is the normal measure required to demonstrate infringement, "supersubstantial" similarity must pertain when dealing with "thin" works.

*Id.* Wong relies on *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1 (2d Cir.1996) to argue that the originality of the Registered Works is slight and only receives "thin" protection. In *Beaudin* the Second Circuit Court of Appeals held that a copyright for a pattern of "black splotches on a white background," similar to the look of Holstein cows, received "thin" protection. *Id.* at 2. In contrast, in *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 845 (9th Cir.2012), the Ninth Circuit Court of Appeals held that a pattern consisting of an arrangement of flowers received the normal substantial similarity protection. In *L.A. Printex*, the plaintiff used a computer to create a design of a "repeating pattern of bouquets of flowers and three-leaf branches." *Id.* at 850. The Ninth Circuit held that the individual elements of the design were not protectable, but the plaintiff's selection, coordination, and arrangement of the elements were protectable. *Id.* The Ninth Circuit noted that there was "a wide range of expression for selecting, coordinating, and arranging floral elements in stylized fabric designs." *Id.* (quotations and citation omitted). Going further, the Ninth Circuit stated that "there are gazillions of ways" to combine petals, buds, stems, leaves, and colors in floral designs on fabric." *Id.* at 850-51

(quotation and citation omitted). For those reasons, the Ninth Circuit held that the copyright protection for the floral pattern was broad and that a work would infringe on the plaintiff's floral pattern only if it was substantially similar to the protected pattern. *Id.* at 850.

Harner's creativity in the selection and arrangement of the elements in the Registered Works was greater than the creativity necessary to paint black splotches on a white background in *Beaudin*. Rather, Harner's level of creativity is on *par* with the creativity displayed in the floral arrangements in *L.A. Printex*. In both cases, the creator used a computer to arrange non-copyrightable elements. Harner conceivably had a wide range of options for selecting which phrases and slogans and photographs to include and how to arrange them, similar to the floral designer in *L.A. Printex*. Because Harner displayed more than scant creativity when creating the Registered Works, the Court finds that, as a matter of law, the correct level of similarity required for infringement in this case is substantially similar.

        i.      *Count I: Yellowbook 2008/2009, pages 256, 261, 264, and 267*

The 2008/2009 Yellowbook Ads consist of four different advertisements. The 2008/2009 Yellowbook Ad on page 256 closely resembles Registered Work #1 and Registered Work #4. Conceding Registered Work #1 and Registered Work #4 are similar in some respects to the 2008/2009 Yellowbook Ad on page 256, Wong points to several differences between the advertisements:

> The computer component pictures to the right of the phrase "Build your own computer!" are not the same computer components. Sometimes the computer images are placed in circular or rounded square frames, sometimes the images have no frames. Further, the wireless receiver to the bottom left of the phrase "Wireless/Notebook Network" is a different photograph. The display on the computer monitor and the CPU located under the phrase "Build your own computer!" are different.

Motion for Summary Judgment at 14.

24

Although a close examination of the 2008 Yellowbook Ad on page 256, Registered Work #1, and Registered Work #4 reveals several minuscule differences, an ordinary observer could reasonably conclude that the selection and arrangement of the elements in the two advertisements are substantially similar. This is especially true if the ordinary observer did not set out to detect the disparities between the works. To begin with, the sizes of the advertisements are identical and occupy half of the telephone directory page. Next, the advertisements all have the exact same phrases and slogans, with the only difference being the digits in the telephone number printed in the lower right corner. The order and positioning of the phrases and slogans in all three advertisements are the same. The phrases and slogans are printed in roughly the same size and font, with identical capitalization and italicization. Although there are slight differences in the size of the lettering, these differences are minor and do not negate the substantial similarities between the phrases and slogans. As well, the selection and arrangement of the images in all three advertisements is nearly identical. Each advertisement has the same number and same type of photographs of computer components. In addition, the location of each photograph of a computer component is nearly identical in the 2008/2009 Yellowbook Ad on page 256, Registered Work #1, and Registered Work #4. For example, in the lower center portion of the three advertisements is a picture of a laptop computer. In all three advertisements the laptop is opened, facing to the right, and the CD drive is open with a CD inside. In addition, a photograph of Cheng is located in the lower left corner in all three advertisements with a similar hair style and smile. Finally, the choice and placement of the arrows in the advertisements are indistinguishable. Two arrows are located in a rectangular box to the left of Cheng's photograph. The arrows in all three advertisements are pointing in the same direction and at the same angle towards computer components.

25

After comparing the selection and arrangement of elements in Registered Work #1 and Registered Work #4 to Wong's 2008/2009 Yellowbook Ad on page 256, a reasonable jury, properly instructed, could find that Wong's overall selection and arrangement of the phrases and slogans and pictures are substantially similar to Harner's Registered Work #1 and Registered Work #4. Wong is therefore not entitled to summary judgment regarding the 2008/2009 Yellowbook advertisement on page 256 in Count I.

However, none of the other 2008/2009 Yellowbook Ads, printed on pages 261, 264, and 267, are substantially similar enough to the Registered Works that an ordinary observer could find that Wong copied Harner's selection and arrangement of the individual elements. The 2008/2009 Yellowbook Ad on page 261 is a smaller advertisement comprising roughly one-fourth of the page and contains no photograph of Cheng. These differences make the advertisement easily distinguishable from the Registered Works.  The 2008/2009 Yellowbook Ad on page 264 features a photograph of Cheng in the lower right corner. Next to Cheng's photograph is the box with the warning similar to Registered Work #3. Although similar to Registered Work #3, the advertisement on page 264 features the photograph of Cheng located on different sides of the advertisements. Instantly recognizable, this difference is such that an ordinary observer could tell the selection and arrangement of the elements in the advertisements apart. Finally, the Yellowbook 2008/2009 Ad on page 267 is noticeably smaller than the Registered Works, filling only roughly a fourth of the page. The photograph of Cheng is printed in the right side with no text printed above the photograph. The Registered Works all contain text at the top of the advertisement and a picture of Cheng printed below the text. This difference is easily identifiable, and an ordinary observer could not find substantial similarities between the selection and arrangement of the elements in the advertisement and the Registered Works. Under

these circumstances, a reasonable jury could not find that the 2008/2009 Yellowbook Ads on pages 261, 264, and 267 are substantially similar to the Registered Works. As a matter of law, Wong is entitled to summary judgment with respect to those advertisements referred to in Count I.

ii.   *Count II: "Use through January 2010" DEX Official Directory, page 347*

The 2010 DEX Ad fills half of the page. The advertisement features the familiar phrase "COMPUTER   PROBLEMS?" at the top. Next to that is a circle with "Starts At $25" printed inside. Under the circle is a small square box with the heading "WARNING" and a triangle with an exclamation mark inside, similar to Registered Work #3. Below four lines of text are several pictures of computer components organized in a cluster. Among the pictures are two pictures of laptop computers. Finally, a picture of Cheng is located in the lower right corner, zoomed out far enough to see that she is crossing her arms.

The selection and arrangement of the elements in the 2010 DEX Ad is not similar enough to any of the Registered Works to confuse an ordinary observer. The most significant difference is the box with the warning. The only advertisement in the Registered Works with a similar box is Registered Work #3. However, the location, shape and size of the warning box are significantly different in the two advertisements. As well, the 2010 DEX Ad is the only advertisement to contain multiple pictures of laptop computers. Finally, the photograph of Cheng is zoomed further out than any of the Registered Works and occupies the smallest area of the ad. A reasonable jury could not find substantial similarities between the arrangement and selection of the 2010 DEX Ad and the Registered Works. Wong, therefore, is entitled to summary judgment on Count II.

27

   iii. *Count III: "Use through January 2011" DEX Official*
     *Directory, pages 276, and 280*

  The 2011 DEX Ad on page 276 occupies half of the directory page. The advertisement

has the same question of "COMPUTER PROBLEMS?" at the top of the page with a circle next

to it. Three lines of text are underneath. Below that text are three small boxes that have the

Microsoft Windows symbol printed inside. Underneath that is a horizontal line of seven pictures

of computers and computer components. The tops of all of the pictures are lined up. Next to that,

in the lower right corner, is a small picture of Cheng.

  There are several differences between the selection and arrangement of the elements in

the 2011 DEX Ad on page 276 and the Registered Works. First, none of the Registered Works

have boxes with the Microsoft Windows symbol printed inside. Second, the alignment of the

photographs of the computer components with the tops all equal is unique to the 2011 DEX Ad

on page 276.  An ordinary observer could not find that the selection and arrangement of the

photographs in the 2011 DEX Ad are substantially similar to any of the Registered Works.

  The 2011 DEX Ad on page 280 fills roughly the right bottom fourth of the page.

The top half of the advertisement has seven lines of text. Below the text are five circles

organized horizontally. The middle circle features the phrase "We Repair Printers too!" and the

outside circles contain photographs of computer components. Beneath the pictures is the same

warning box as Registered Work #3 except the warning is contained in a rectangular box laid

horizontally. A picture of Cheng is printed in the lower right corner.

  The 2011 DEX Ad on page 280 has the same selection of phrases and slogans and

photographs as Registered Work #3. The arrangement of the elements, however, is significantly

different. The DEX advertisement fills only the bottom corner of the yellow pages, whereas

Registered Work #3 fills roughly half the page. The warning box contained in each

advertisement is sized differently, with the box in the Registered Advertisement being tall and narrow, and the box being short and wide in the 2011 DEX Ad on page 280. Finally, the photograph of Cheng is located in different corners of the advertisements. An ordinary observer could not find that the arrangement of the elements in the 2011 DEX Ad on page 280 and the Registered Works are substantially similar.

The Court concludes that a reasonable jury could not determine that the 2011 DEX Ads are substantially similar to the protected selection and arrangement of elements in the Registered Works. Consequently, Wong is entitled to summary judgment on Count III.

<em>iv.     Count IV: 2010/2011 Yellowbook Ad on page 238</em>

The 2010/2011 Yellowbook Ad on page 238 occupies roughly half of the Yellowbook page. The advertisement differs from the Registered Works in several significant ways. First, the 2010/2011 Yellowbook Ad does not contain a photograph of Cheng, unlike all of the Registered Works. The 2010/2011 Yellowbook Ad, as well, contains the phrase "REPAIRING ALL BRANDS of PCs & LAPTOPS," which does not appear in any of the Registered Works. Finally, the advertisement has a rectangular box in the lower right corner enticing potential customers by offering 10% off any labor charges by mentioning the advertisement. None of the Registered Works contain such an offer. For those reasons, neither an ordinary observer nor a reasonable jury could find that the selection and arrangement of the elements in the 2010/2011Yellowbook Ad on page 238 and the Registered Works are substantially similar. Wong is entitled to summary judgment on Count VI.

*v.*     *Count V: Advertisement on KRQE.com*

The advertisement located on KRQE.com is the same advertisement that was published

on page 276 of the "Use through January 2011" DEX Official Directory in Count III. For the

same reasons as discussed in that section, Wong is entitled to summary judgment on Count V.

*(c) Statutory Damages and Attorney's Fees*

A court may award up to $150,000 in statutory damages in cases of willful copyright

infringement. *See* 17 U.S.C. § 504(c)(2). "Statutory damages are designed not solely to

compensate the copyright owner for losses incurred, but also to deter future infringement."

*Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1264-65 (D. N.M. 2009), *aff'd*, 390 F. App'x 780

(10th Cir. 2010) (quoting *Johnson*, 149 F.3d at 504). The Copyright Act provides that

> [N]o award of statutory damages or of attorney's fees, as provided by sections 504
> and 505, shall be made for ... (2) any infringement of copyright commenced after
> first publication of the work and before the effective date of its registration, unless
> such registration is made within three months after the first publication of the
> work.

17 U.S.C. § 412. The Copyright Act allows a court "no room for discretion, mandating that no

attorney's fees or statutory damages be awarded so long as the infringement commenced before

the registration of the copyright." *Id.*

Harner registered his copyright on June 7, 2010. Therefore, for Harner to receive

statutory damages and attorney's fees under the Copyright Act, Wong would have had to have

published the infringing advertisement within three months before June 7, 2010. In other words,

Harner would need to assert that Wong's first act of infringement happened after March 7, 2010.

The only act of alleged infringement to survive summary judgment occurred on page 256 of the

2008/2009 Yellowbook. The parties do not present a date when the Yellowbook 2008/2009 was

published. Assuming it was published at the end of 2008, the first occurrence of infringement

commenced nearly a year and a half before the June 7, 2010 registration date. Hence, Harner could not receive statutory damages and attorney's fees under the Copyright Act. The Court therefore will grant summary judgment on the claims for statutory damages and attorney's fees under the Copyright Act.

IT IS ORERED that:

1. Wong Corporation's Motion for Summary Judgment (Doc. 17) is granted in part;

2.summary judgment will be denied on Harner's claims referring to the advertisement on page 256 of the 2008/2009 Yellowbook Ad in Count I;

3. summary judgment will be granted in Wong's favor on Harner's claims referring to the advertisements on pages  261, 264, and 267 of the 2008/2009 Yellowbook Ads in Count I;

4. Harner's claims referring to the advertisements on pages 261, 264, and 267 of the 2008/2009 Yellowbooks Ads in Count I will be dismissed with prejudice;

5. summary judgment will be granted in Wong's favor on Counts II, III, IV, and V;

6. Counts II, III, IV, and V will be dismissed with prejudice;

7. summary judgment will be granted in Wong's favor regarding Harner's claims for statutory damages and attorney's fees under the Copyright Act; and

8. Harner's claims for statutory damages and attorney's fees under the Copyright Act will be dismissed with prejudice.

UNITED STATES DISTRICT JUDGE